## JOSIAH FISK AND OTHERS V. WALKER WILSON.

Where the apparent title to land is in the name of a deceased person, and his administrator applies for and obtains an order to sell the same as the property of the intestate, injunction is the proper remedy of the real owner, and not a contestation of the sale in the Probate Court, to be followed up by appeal or *certiorari.*

Where the petition for an injunction, being under oath, alleged the loss of an instrument which was evidence of the plaintiff's right, it was held that secondary evidence of the existence and contents of the instrument was properly admitted, without further showing of the loss of the original.

Where the mortgagee obtained an order of the Probate Court for the sale of the :mortgaged property, and a third party gave notice to the bidders at the sale, that he was the real owner of the land, and that the title stood in the name of the deceased in trust for him, and the land was bid off by the mortgagee and another, and such third party afterwards obtained an injunction restraining further proceedings in the matter, which was served on the Chief Justice before the confirmation of the sale, the injunction was perpetuated, upon payment of the mortgage by the plaintiff.

Where the appellant would not, in any view of the law of the case, have been entitled to a verdict, the Court will not revise the refusal of instructions asked by him.

Where the assignment of errors indicates no particular charge, or ruling of the Court upon instructions, which is complained of; but refers, in general terms, to "the several charges refused," and "each several charge and instruction given," and, on reference to them, they are found to be numerous, this Court will not deem it necessary to revise them, unless the right and justice of the case may seem to demand it.

Where a deed, absolute on its face, was made in 1838, and the grantee mortgaged the property in 1846, and in 1850, after the death of the grantee, upon the institution of proceedings to enforce the mortgage, the grantor in the deed came forward and alleged that the deed, though absolute on its face, was in fact made in trust for a particular purpose, as shown by the bond of the grantee taken at same time, but alleged to be lost—there being no other act of adverse claim proved, except the mortgage, it was held to be clear that no period of limitation or prescription had intervened to bar the right of the grantor.

Appeal from Travis. In the year 1838 Walker Wilson, the plaintiff in the Court below, conveyed the land in controversy in this suit, to W. B. Goodman. On the 8th of September, 1846, Goodman executed a mortgage upon the land, to Isaac

Applewhite, to secure the payment of said Goodman's note for $100, payable to Applewhite, at six months. At January Term, 1850, of the Probate Court of Travis county, Josiah Fisk obtained letters of administration on the estate of said Goodman. At February Term, 1850, of the Probate Court, said administrator obtained an order for the sale of the land, to pay the mortgage debt to Applewhite, returnable at April Term. On the 4th of June, 1850, the land was sold to F. W. Chandler and Isaac Applewhite. On the same day, Wilson prepared and verified his petition in this suit, for an injunction against the administrator and for an order to the Probate Court to stay further proceedings. It appeared from the petition and evidence, that the deed to Goodman, though absolute on its face, was in fact in trust for the purposes of sale; and that Wilson had taken a bond from Goodman to that effect at the time. The petition alleged the loss of the bond; and it charged Applewhite with notice. The petition also charged Chandler with notice before the sale. The petition prayed that in the event that he should fail to prove that Applewhite had notice of the trust when he took the mortgage from Goodman, enough of the land might be sold by order of the Court to pay that debt and interest, and that he have judgment against the estate of said Goodman for a like amount.

The order for injunction was made on the 6th of June, and the petition and bond were filed on the 17th. The injunction was issued to and served on the Chief Justice, June 18th. At June Term of the Probate Court, after the service of the injunction, the sale was confirmed.

Applewhite, Fisk and the heirs of Goodman were cited. Chandler and Applewhite filed a petition of intervention, alleging the particulars of their title. Chandler had been made a defendant by an amendment of the petition.

The Court instructed the jury to find the facts specially, in case they found that the deed to Goodman was made in trust as alleged. The verdict was as follows:

We, the jury, find for the plaintiff, and that the said plain-

tiff conveyed to W. B. Goodman the land in trust for the use and purposes set forth in plaintiff's petition, and that Goodman executed a bond to said plaintiff to re-convey the said land to plaintiff.

We, the jury, believe from the evidence that the defendant Goodman executed the note and mortgage to Applewhite, as set forth in the pleadings, and that Applewhite had no knowledge of the claim set up by the plaintiff Wilson to the land in controversy, and therefore we, the jury, find for said Applewhite the amount of his note, one hundred dollars debt, and interest fifty-six dollars.

We, the jury, believe from the evidence that the injunction issued in this case was served on the Chief Justice of the County Court before the confirmation of the sale of the land to Applewhite and Chandler.

The injunction was perpetuated upon payment of the mortgage, and the deed from Wilson to Goodman ordered to be cancelled.

There was a statement of facts, the purport of which, as well as the points made in the progress of the case, so far as they are material to this report, appear from the Opinion.


*Hamilton* and *Green*, for appellants.

*DuVal* and *Paschal*, for appellee.


WHEELER, J.  There is nothing in the objection to the ruling of the Court refusing to dissolve the injunction.  The defendants undertook to set out specifically the grounds of their motion; and, that the plaintiff had another remedy, by appeal from the order of sale, is not one of them.  But if it were, it was no answer to the case made by the petition.  The District Court was the proper forum in which to assert the plaintiff's rights; and an injunction was the proper remedy to restrain the threatened injury.  This, it is conceived, is quite too clear for controversy.

Nor is there anything in the objection to the admission by the Court of evidence of the contents of the lost bond. Its loss was averred in the petition, under the oath of the party; and a sufficient foundation was there laid to warrant the Court in admitting secondary evidence to supply its loss. (1 Greenl. Ev. Sec. 558.)

Neither is there anything in the objection that the plaintiff had not answered to the matter pleaded by the party, styling themselves intervenors. They were made defendants to the plaintiff's suit, by his amended petition; and their pleading is to be taken as an answer to the plaintiff's case.

Numerous objections were urged to the admission of the plaintiff's evidence; but they seem to us of a character not to require special notice. Indeed, the defendants seem to have objected and excepted in every possible and conceivable form, and at every step in the progress of the cause; and the record presents a multiplicity of points raised and decided in the progress of the trial, a number of which are assigned as grounds for reversing the judgment. But on a careful inspection of the record, we do not find that the Court has committed any error of which the defendants can complain.

Upon the proofs, the law of the case seems clear for the plaintiff, and appellee. The proof of notice to the defendants was clear and positive. As purchasers with notice, they took their legal title subject to the plaintiff's equity. Their title thus acquired, with notice of the plaintiff's prior equity, cannot avail them to defeat that equity. In the capacity of purchasers, they cannot claim that their legal title shall be protected against the plaintiff's equitable right. (Briscoe v. Bronaugh, 1 Tex. R.) The confirmation of the sale by the Probate Court cannot help their case. It would not be the better for an hundred confirmations under such circumstances, if such a thing could be supposed. Nor did the making of a deed, by the administrator, better their condition. It matters not how complete and perfect their legal title may have been made;

having been acquired with notice of the plaintiff's equity, and against his efforts to assert it by a judicial proceeding, and in contempt of the process of a Court of competent jurisdiction, its completion, under the circumstances, can be of no avail to the defendants.

As a creditor, having acquired a lien upon the property, for aught that appears, without notice of the plaintiff's title, the defendant Applewhite was in a better condition. He had a right to satisfaction of his debt; and to institute legal proceedings, if necessary for that purpose. And if, when the plaintiff asserted his title, the defendants had manifested a willingness to accept satisfaction of the debt and interest, and the expenses incurred by them up to that time, in seeking to enforce payment of the debt; and the plaintiff had then declined to make such satisfaction, the relief sought might have been refused him; and he would, at least, have been justly chargeable with the satisfaction of the debt and expenses out of the property, and all the costs of the litigation. But the defendants manifested no such disposition; but on the contrary, evinced a determination to be satisfied with nothing short of the appropriation to themselves of the plaintiff's property. Though the plaintiff may at one time have been unwilling or unable to discharge the incumbrance, yet he declared his willingness to do so at the sale; and in his amended petition, he expressly conceded the right of the defendants in that regard, asking relief only upon that condition. But the defendants, instead of expressing a willingness to accept satisfaction of their demands, denied and contested the plaintiff's equity, and sought by every legal means to defeat it. They do not even ask restitution of their debt and expenses; but rest their whole defence upon the supposed legality of their title, and inability of the plaintiff to maintain his equity. They were, therefore, rightfully held answerable for the costs of the litigation; which, if they did not needlessly occasion by their subsequent acts, they assumed and rendered themselves responsible for.

Fisk v. Wilson.

A long list of instructions was proposed by the defendants and refused; and we are asked to revise them. But we deem it unnecessary; for the reason that in no view of the law of the case were the defendants entitled to a verdict. No instructions which legally could have been given would have changed the result. If the jury had found differently their verdict must have been set aside as manifestly unwarranted by the evidence. Moreover, where the assignment of errors indicates no particular charge, or ruling of the Court upon instructions, which is complained of; but refers in general terms to "the several charges" refused, and "each several charge and instruction given;" and on reference to them they are found to be numerous, this Court will not deem it necessary to revise them, unless the right and justice of the case may seem to demand it. We cannot be required, by a general assignment of that character, to search through a long list of propositions, asked as instructions, but apparently uncalled for by the case, to see whether, by possibility there may have been some one instruction refused which it would have been proper to have given. The object of assigning errors is to point the Court, and the adverse party, to the particular ruling, or ground of error, on which the party intends to rely for reversing the judgment. This object is not attained by assigning generally, as is too frequently the case, all the several rulings of the Court, as appear by bills of exceptions and otherwise by the record; especially where, as in this case, the record presents a multiplicity of objections, rulings and exceptions. A party may well be excused for reserving points, in the hurry of a trial, which upon reflection may seem not to be tenable; but there can be no occasion, in assigning errors for the revision of this Court—which is supposed to be done with some degree of deliberation and circumspection—to invite attention to every point thus reserved. Nor is the purpose of assigning errors attained by multiplying the assignments, until they leave it uncertain on which particular one or more of them, the party

intends to rely for a reversal. It would be as well that there should be no assignment of errors, as that they should be as numerous and multifarious in their references as the rulings in the case. And where they are so, this Court will not consider itself called on to revise them ; unless where the justice of the case may seem manifestly to require that the judgment of the Court be revised upon the merits ; which will be done where a case is submitted for judgment upon the merits, though no errors are assigned. We might therefore have declined to revise the rulings of the Court upon instructions, on account of their number and the consequent generality of the assignment. But there is one of the instructions asked by the defendants (the 15th) which relates to the defence pleaded, of the Statute of Limitations, which it is proper to notice. That defence clearly was not tenable. The delivery of the deed to Goodman, under the circumstances, merely conferred on him the naked power of an agent, to sell for the benefit of his principal. It was an express trust, and there is no evidence that the trustee ever denied the right of the benificiary, the plaintiff ; or that he or any one claiming under him had ever questioned it, up to the commencement of this suit, or done any act inconsistent with the plaintiff's right, except the giving of the mortgage, of which the plaintiff does not appear to have had notice until about the time of commencing suit. There was no adverse possession of the land, and it is clear that no period of limitation or prescription had intervened to bar the plaintiff's right.

We are of opinion that there is no error in the judgment, and it is affirmed.

Judgment affirmed.